### WILLARD v. UNITED STATES.

### JOHNSON v. UNITED STATES.

Civ. Nos. 1184, 1185.

United States District Court
E. D. Tennessee, N. D.

April 28, 1950.

.M. W. Egerton, Knoxville, Tenn., W. W. Davis, Knoxville, Tenn. (Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., on the brief), for plaintiffs.

Henry L. Spencer, Sp. Asst. to Atty. Gen., Otto T. Ault, U. S. Atty., Chattanooga, Tenn., Ferdinand Powell, Jr., and James M. Meek, Asst. U. S. Attys, Knoxville, Tenn. (Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Henry L. Spencer, Sp. Assts. to Atty. Gen., Otto T. Ault, U. S. Atty., Chattanooga, Tenn., Ferdinand Powell, Jr., Asst. U. S. Atty., Knoxville, Tenn., on the brief), for defendant.

TAYLOR, District Judge.

These suits, tried together, are to recover sums of money required by the Government to be paid on account of deficiency income tax assessments and, in the case of W. K. Johnson, an additional sum representing an admitted overpayment. The deficiency assessments arose from determinations by the Commissioner of Internal Revenue that certain income included in

the tax returns for the year 1944 made by Helen Ashe Willard, wife of James E. Willard, and Jo Byrum Johnson, wife of W. K. Johnson, should have been included in the returns of the husbands. The determinations were based upon the commissioner's conclusion that gifts from the husbands to the wives of their interests in a partnership that was the source of the income did not sufficiently divest the husbands of those interests to create, for income tax purposes, separate, bona fide partnership estates in the wives.

Plaintiffs, who were successful contractors, joined with D. G. Cockrum in November, 1942, to purchase a lumber business, the intention of plaintiffs, according to their testimony, then being to establish independent sources of income for their wives. Plaintiffs acquired the business with the understanding that Cockrum, when financially able, would buy from them 50% interest, and that when that interest was acquired the three men and their wives would operate temporarily as partners. On November 30, 1943, a transfer of 33⅓% to Cockrum was made. As part of the partnership arrangement, each of the plaintiffs gave to his wife 25% interest in the business, each retaining 8⅓% for subsequent transfer to D. G. Cockrum. The 8⅓% interest owned by each of the plaintiffs was transferred to Cockrum November 30, 1944. All of the money for the original purchase in 1942 was furnished by plaintiffs, and the later transfers to Cockrum were delayed until Cockrum was financially able to make the purchases. From the first the management and operation were delegated to Cockrum, a man experienced in the lumber business, his compensation beginning at $250 per month plus one-third of the profits. Neither the plaintiffs nor their wives participated in management or operation, their share in the profits being attributable wholly to their capital contributions.

Plaintiffs have given as their reasons for making the gifts to their wives a desire to establish independent incomes for them. Aware of the hazards and uncertainties of the contracting business, they adopted this method of providing for the economic security of their families. Since the transfer of interests to the wives, the wives have received their proportionate shares of the profits of the business. They have used this income at will, without having to account to their husbands for any part of it. Prior to the arrangement, they received allowances from their husbands. They have continued to receive allowances, not less than, but more than formerly. Following the gifts to their wives, plaintiffs filed federal gift tax returns, and both they and their wives have from the beginning regarded and treated the gifts as complete, unconditional, and irrevocable. The arrangement resulted in a tax saving, but that result is declared by plaintiffs to have been no more than incidental to the primary aim which led to the formation of the partnership business and attended the gifts.

When the original purchase was made, plaintiffs acquired both personalty and realty. In connection with the transactions of November 30, 1943, the realty was withdrawn as an asset of the business, title thereto being retained by plaintiffs, who for some time thereafter received a rental for its use by the partnership. The total purchase price was $40,359.27. Of this total $9,850 was apportioned to real estate. Transactions subsequent to the tax year in question have not changed the status of plaintiffs' wives, each of whom has continued to own 25% interest and to receive 25% of the net profits. The wife of D. G. Cockrum also acquired a part interest in the firm, and D. G. Cockrum has acquired from plaintiffs one-half interest in the realty on which the lumber business is located.

During the tax year of November 30, 1943, to November 30, 1944, the business was operated as a partnership and was owned in the following proportions: D. G. Cockrum and wife, 33⅓%; W. K. Johnson, 8⅓%; J. E. Willard, 8⅓%; Helen Ashe Willard, 25%; Jo Byrum Johnson, 25%. Mrs. Willard and Mrs. Johnson each received 25% of the net profits of the business for that year, and each included the same in her income tax return filed for the year 1944. It is this partnership income of the wives which the Commissioner held should have been included in the income tax returns of the husbands for that year,

974

and on account of which the deficiency assessments were made.

There is no provision in the law of partnership which says that partners must contribute equally to the partnership capital, or that the contribution of each must have had a particular origin. Nor is there anything in the law of partnership which says that upon the taking in of new members and the formation of a new partnership the incoming partners must make any contribution at all to capital. If husbands, being partners, decide to form a new partnership which includes their wives as partners, they are quite within the law in both the decision and its consummation. A wife may be a partner in a firm of strangers, and she may still be a partner, though her husband happens to be a member of the firm.

This litigation arose because, apart from its ordinary legal and business implications, a partnership may, for income tax purposes, find itself hedged with limitations. Under partnership law, the origin of a capital contribution made by a partner is not material. Under the tax holdings the origin has been held to be material. This materiality has been especially emphasized in cases of so-called family partnerships, and in determining whether a bona fide partnership exists the Tax Commissioner, with judicial support, has refused to be bound by local law or local standards of bona fideness. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. Federal tests are applied, and by their application family partnership arrangements that have had the effect of lessening the tax burden have fallen one after another. Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner of Internal Revenue, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. Congress and the courts have not yet reached the extreme point of requiring citizens to so arrange their business affairs as to yield the greatest possible tax, but arrangements which result in tax savings are subjected to close and suspicious inquiry, as the cases here well illustrate.

A slight swing of the inquiring pendulum in a direction favorable to the taxpayer is represented by the decision of Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1213. In the cases before this Court, the partnership is questioned mainly on the ground that the wives of plaintiffs contributed no capital originating with them and contributed nothing in the way of services. As for the non-contribution of services, the same was true of the plaintiffs. So far as services created income, the whole income of the partnership was earned by Cockrum. During the tax year in question, there were six partners, including the plaintiffs and their wives. The Government does not insist that all of the partnership income should have been included in the income tax return of Cockrum. The insistence, if made, could not stand, for income may be attributable to capital as well as to services. If the wives of plaintiffs contributed no services, the answer is that they were no more required to do so than were the husbands. If the wives were partners in name only, so were their husbands, in so far as contribution of services is the test. The other part of the objection is that the contribution of capital made by the wives did not originate with the wives. It is in the disposition of this test that the Culbertson decision has present significance.

In its opinion in the Culbertson case, the court said: "We turn next to a consideration of the Tax Court's approach to the family partnership problem. It treated as essential to membership in a family partnership for tax purposes the contribution of either 'vital services' or 'original capital.' Use of these 'tests' of partnership indicates, at best, an error in emphasis. It ignores what we said is the ultimate question for decision, namely, 'whether the partnership is real within the meaning of the federal revenue laws' and makes decisive what we described as 'circumstances (to be taken) into consideration' in making that determination. * * * The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the *Tower* case, but whether, considering all the facts—the agreement, the conduct of the parties in

execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

The two cases here were tried together by agreement of the parties, with the understanding that separate judgments would be entered. Their being tried together has tended to cloud the merits of the individual cases and give to the transaction some of the aspects of a conspiracy. When one of them is considered separately, its true character becomes more apparent and the bona fide nature of what was done less in doubt. The Willard case is selected for individual consideration because it heads the list.

In 1942, James E. Willard, joined with another to purchase a lumber concern known herein as Broadway Manufacturing Company. A third man, experienced in operation of the business, was employed to operate it for them. Willard's object in joining in the purchase was acquisition of a business for his wife. By November 30, 1943, he and his associates had worked out the details for and had completed the organization of a partnership, which included Willard's wife as owner of 25% interest. This 25% interest was a gift from Willard. Willard himself retained, or was accorded for temporary retention by his associates 8⅓% interest. Thus during the tax year of November 30, 1943, to November 30, 1944, Willard owned 8⅓% interest, his wife owned 25%, and 66⅔% was owned by four other persons, all outside the Willard family.

When the situation is thus presented, it immediately becomes apparent that this was far from the pattern of a typical family tax-evasion partnership. In the usual tax-evasion partnership, the wife (or husband, as the case may be) is in fact a figurehead, a partner in name only, the husband having the management of the business and the receipt and disposition of the income. That situation did not exist here, even in a remote sense. During the tax year under consideration, Willard owned only 8⅓% interest. Management, operation and control of the business were in the hands of Cockrum, a person outside the Willard family. Willard received only that share of the profits allocable to his 8⅓% interest. He received none of the profits paid to his wife, either directly or indirectly, and had no control whatever over their disposition. He was a partner with his wife, but he was a partner also with four other people, all outside the family and together owners of 66⅔% interest.

Since this was not a family partnership burdened with the usual tax-evasion or tax-avoidance potentialities, the only other ground for the Government's attack is that Mrs. Willard obtained her interest as a gift from her husband. This is an untenable ground.

Acquisition by gift is one of the oldest known methods of becoming the owner of property. The Government recognizes it as a legitimate method and has imposed a tax upon gifts. That Willard gave his wife an interest in Broadway Manufacturing Company instead of giving her the cash with which to purchase the interest is not regarded as of consequence, the end result being the same either way. That the gift was from husband to wife is not objectionable if it was bona fide. That it was bona fide is established by the overwhelming weight of the evidence. To establish for his wife a private, independent income was Willard's aim. To achieve that aim he gave her an interest in a valuable business. The partnership was the result of a number of persons joining together in good faith and acting with a business purpose. The fact that capital contributed by Mrs. Willard originated as a gift to her made it none the less a real contribution, and any objection on account of the gift feature is only one circumstance in the arrangement, and that circumstance, if questionable at all, is overcome by the accumulation of circumstances in favor of bona fideness. The

gift itself was bona fide, and when that is said, the objection that her capital contribution did not originate with her losses all significance. Kent v. Commissioner, 6 Cir., 170 F.2d 131; Simmons v. Commissioner, 5 Cir., 164 F.2d 220.

What has been said of the Willard case applies equally to the case of W. K. Johnson. Both plaintiffs are entitled to judgments as prayed. James E. Willard should have judgment for $2,594.34, with interest from March 10, 1948. W. K. Johnson should have judgment for two items, namely, refund for the deficiency tax payment of $2,675.55 with interest from March 10, 1948, and refund for the 1944 overpayment of $245.80, with interest from March 15, 1945.

The necessary orders will be prepared accordingly.